Ann Brin, appellee, v. Harry Brin, appellant.

No. 49344.

(Reported in 87 N.W.2d 764)

February 11, 1958.

Lundy, Butler & Lundy, of Eldora, and Guthrie & Blackburn, of Webster City, for appellant.

Burnquist, Helsell, Burnquist & Kersten, of Fort Dodge, for appellee.

OLIVER, J.—This is an appeal by defendant, Harry Brin, from a judgment entered May 5, 1956, modifying, for the second time, a divorce decree rendered March 17, 1943, by increasing the payments to plaintiff, Ann Brin. There was a prior appeal from the first modification. Brin v. Brin, 240 Iowa 659, 37 N.W.2d 261. The original divorce decree in March 1943 awarded plaintiff the custody of the two minor children, Leon and Bradley, judgment for $15,000, which was designated alimony, $200 per month until Leon Brin reached the age of twenty-one, then $150 per month until Bradley became of age, and thereafter $100 per month.

When Leon became of age and the monthly payments to plaintiff were reduced to $150, she petitioned that the divorce decree be modified by increasing such payments to $300. Trial resulted in the first judgment and decree of modification, entered May 12, 1948, which stated in part:

"* * * with the increased cost of everything [living] of which all courts take judicial notice, the court at this time finds that the decree of divorce heretofore granted between these parties should be modified and that the amount allotted for the support of Bradley Brin should be increased. First, because of the increased cost of living, and, second, because of the greatly increased income of the defendant, his father. That a fair increase will be from $150 per month to $250 per month."

A supplemental judgment filed May 25, 1948, stated the court had not passed upon the question of alimony for the plaintiff.

Defendant appealed from these judgments and they were affirmed in Brin v. Brin, supra, 240 Iowa 659, 37 N.W.2d 261. That decision sets out and interprets various provisions of the divorce decree as originally rendered and as modified in 1948. It also enunciates certain legal principles applicable to such cases. To the extent its pronouncements are here pertinent they will be followed.

Bradley Brin became twenty-one years of age in February 1955. This terminated the effect of the 1948 order of modification which had increased Mrs. Brin's monthly payments for his support by $100. It also reduced by $50 per month the amount payable to her under the provisions of the original decree.

Hence, the payments made her were reduced from $250 to $100 per month March 1, 1955. Thereafter she petitioned for an increase in alimony allotment and modification of decree, asking that the payments be increased from $100 to $250 per month from March 1, 1955. Trial resulted in judgment modifying the original decree by increasing the monthly payments to plaintiff from $100 to $175, as of July 1, 1956, and this appeal by defendant.

■ I. As stated in Brin v. Brin, supra, 240 Iowa 659, 662, 37 N.W.2d 261, 263, the right of the court to modify an original allowance (either for alimony or child support) to conform to the changed circumstances of the parties, is not in dispute, and the question is one of fact: "Does the record show the necessary change of circumstances to render the modification 'expedient'?" Section 598.14, Code of Iowa, 1946. However, defendant contends the circumstances of the parties at the time they were divorced may not be considered. His counsel state:

"The orders of modification of May 1948 are conclusive as to the circumstances of the parties then existing, plaintiff having at that time asked increase of alimony and child support and the court having granted only the increase as to child support and refused to increase alimony."

That the court "refused to increase alimony" is not strictly correct. The supplemental judgment of May 25, 1948, states: "The court has not passed upon the question of alimony for the plaintiff in any respect and the original decree in this case is not in anywise modified as to alimony." The supplemental judgment was not void and was not reversed or modified upon the appeal. It states that the trial court in that case did not consider the question of a change in alimony for plaintiff. Hence, it clearly appears that matter was left open for determination upon future application and that the trial court, in the case at bar, was correct in considering changes in the circumstances of the parties since the original divorce decree.

■■ II. Plaintiff was fifty-three years old at the time of the trial in 1956. She testified the cost of living had increased since her divorce and estimated the cost to her per year, including federal income tax, had increased to $3472. Her annual in-

come then consisted of $1200 alimony plus $672 received from the investment of the $15,000 granted her by the divorce decree. The judgment here on appeal would increase her alimony by $75 per month, before income taxes. After taxes the increase would be approximately $60 per month or $720 per year. With this increase her income would still be substantially less than her estimated cost of living.

From the standpoint of the needs of Mrs. Brin, the trial court found the cost of living had almost doubled since 1943 and had made the $100 monthly payments inadequate for her support. The court held it would take judicial notice of such increase, pointing to such a holding in Brin v. Brin, supra. The court found also:

"So far as the defendant's circumstances are concerned, the situation is as follows: From 1942 to July 21, 1955, his furniture business in Webster City, Iowa, had total profits of $440,-251.13. Out of this he has had to pay Federal income tax and deficiencies assessed against him and State income taxes totaling $278,193.38. His net income after taxes during this period was $162,057.75. His gross sales for the year ending July 31, 1955, were $473,754.40. He shows a loss of $13,131.93 for that year's business. This loss is, however, reflected in the total profits stated above. He has had an average amount available for personal drawings since 1942, of more than $10,000 per year after deducting depreciation. Depreciation for the year ending July 31, 1955, was $6193.34. For this particular year he actually drew about $12,000, which he paid out as follows: Bradley's college expense, $2400; loan to Leon Brin, $2300; life insurance premiums paid per decree, $800; Ann Brin, $2250; balance available to himself, $4250.

"Bradley finishes college in June 1956, and the loan to Leon Brin is not a recurring expense. The defendant's actual cash outlay will therefore be reduced by $4700 after July 1, 1956, so far as these items are concerned."

Although the figures in defendant's accounts may be accepted, some of those bearing upon his net worth should be considered in connection with other parts of the record. Defendant's records show his net worth at the end of 1942 was $106,894 and January 31, 1956, was $133,059. However, the 1942 figure

did not take into account a deficiency in 1941 income taxes, for which defendant in 1948 paid $30,650 principal and $11,632 interest. Apparently, it was not shown because it was not known to defendant or the government until some years later. However, the tax was an obligation which decreased defendant's net worth at the end of 1942 by $30,650.

Moreover, the buildings and lots used in the business were carried on defendant's books in 1956 at $833, the cost of the land, plus $12,731 for the cost of the buildings, depreciated from $44,057. There was evidence these properties were worth $90,000 at the time of the trial and that defendant's home was worth $18,000. This unrealized increase in value would substantially increase defendant's actual net worth in 1956, over the figures shown on his records. The excess of the actual value over the book value of the business property at the time of the divorce probably was much less.

In 1953 defendant borrowed money to pay his income tax deficiencies. By 1956 these obligations, upon which he was paying about $2400 per month, were reduced to $69,000. His Federal income tax returns show losses for the tax years ending July 31, 1954 and 1955, but his records show a profit of $4530 for the first six months of the next tax year.

"His accounts payable to wholesalers are of about the same amount as in previous years. He no longer discounts his bills but is having no difficulty in satisfying his merchandise creditors. His business is good and his gross profit is about average for the furniture business. His warehouse expense is high. He handles all of his customers' conditional sales paper which as of January 31, 1956, was $146,948.01."

The trial court found that, considering all the factors, defendant's financial condition had substantially improved since March 17, 1943, when the divorce was granted; that some of plaintiff's expenses had substantially increased, and that the monthly payments to plaintiff should be increased to $175 per month.

However, the court adjudged the increase should be delayed until July 1, 1956, for the reason that, "Bradley Brin will by that time have graduated from college and defendant will be relieved of that $2400 per year expense."

Defendant's chief financial burden has been income taxes and heavy deficiency assessments. The record indicates that when this case was tried most of his troubles in that connection were behind him. As quoted in Brin v. Brin, supra, " 'much weight should be given to the findings of the trial court * * *.' " In the case at bar, the record, thus considered, persuades us that the judgment and decree should be affirmed.

We have considered the many authorities and various arguments presented by counsel for defendant and find none of them sufficient to warrant a reversal.—Affirmed.

All JUSTICES concur except SMITH, J., not sitting.